IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| TOMMY LEE PIERSON and § | |
| SHEILA STEM PIERSON, § | |
|               Plaintiffs, § | |
| V. § | |
| § | No. 1:16-CV-1070-SS-ML |
| FIRST NATIONAL BANK OF GIDDINGS § | |
| and SHAWN L. HANCOCK § | |
| d/b/a H&H RECOVERY SERVICES, § | |
|               Defendants. § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO THE HONORABLE SAM SPARKS
UNITED STATES DISTRICT JUDGE:

Before the court are Plaintiffs' Motion for Summary Judgment and all related pleadings.[1] A hearing was held on the Motion on November 30, 2017. Plaintiffs' counsel and Defendant First National Bank of Giddings's counsel appeared at that hearing, but Shawn Hancock, *pro se*, did not appear. Dkt. # 35. Having reviewed the pleadings, the motions, the briefing, the evidence, and the relevant law, as well as the entire case file, the undersigned issues the following Report and Recommendation to the District Court.

**I.    BACKGROUND**

This dispute arises out of an alleged repossession of a 2006 Dodge pickup owned by Tommy Lee Pierson and Sheila Stem Pierson ("the Piersons"). Dkt. #23, Am. Compl., ¶ 1. In 2013, the Piersons borrowed $10,000 from Defendant First National Bank of Giddings ("FNB Giddings"), pledging a 1998 Freightliner truck as security for the loan. Dkt. #24-3, Decl. Sheila

---

[1] The foregoing motion and related briefings were referred by United States District Judge Sam Sparks to the undersigned for a Report and Recommendation as to the merits pursuant to 28 U.S.C. § 636(b)(1)(B), Rule 72 of the Federal Rules of Civil Procedure, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

1

Stem Pierson, ¶ 2. On February 4, 2014, the Piersons refinanced that loan and pledged the same truck as well as a 2006 Dodge pickup as collateral. *Id*. at ¶ 3. On February 24, 2015, the Piersons entered into a third loan with FNB Giddings, again using the 1998 Freightliner and 2006 Dodge trucks as security for the loan. *Id*. at ¶ 5. The Piersons worked with Billy Morgan, Executive Vice President and Senior Lender at FNB Giddings, to enter into each of these loan agreements. Dkt. #24-1, Dep. Billy Morgan as Representative of First National Bank of Giddings ("Morgan Dep.") 14:23-15:2.

The Piersons made their payments as agreed on the first two loans, but when they entered the third loan in February of 2015, they fell behind on their payments. Dkt. #24-2, Dec. Tommy Lee Pierson, ¶ 6. They first fell behind in August of 2015, but brought the loan current in September. They again fell behind by one payment for several months, and then fell two payments behind in February 2016. They brought the loan current in March 2016, but again fell behind by one payment in April 2016, and by two payments in May, by one payment in June, and again by two payments in July 2016. Dkt. #24-1, Morgan Dep. 18:2-17. Because the loan was then "on the verge" of being three payments behind, Morgan decided to initiate repossession of the two trucks serving as security on the loan. *Id.* at 18:18-19:11. On the recommendation of another loan officer at FNB Giddings, Morgan contacted Shawn Hancock of H&H Recovery Services ("Hancock"), a local repossession agent, to repossess the Freightliner truck and the Dodge pickup. *Id*. at 19:12-21:6.

The Piersons allege that on July 30, 2016, Hancock "suddenly appeared" in their barn to repossess the vehicles, and that the only way he could have entered the property was by entering through an outside gate on which they kept a "No Trespassing" sign. Dkt. #24-3, Decl. Sheila Stem Pierson, ¶¶ 6-7; Dkt. #24-2, Decl. Tommy Lee Pierson, ¶¶ 7-8. Mr. Pierson discussed the

loan with Hancock, and Hancock represented that the bank would work with the Piersons to make payment arrangements that would allow them to keep the 2006 Dodge truck. Upon that representation, the Piersons surrendered the 2006 Dodge truck to Hancock.[2] Dkt. #24-2, Decl. Tommy Lee Pierson, ¶ 8.

Morgan spoke with Hancock on August 1, and Hancock relayed that he had informed the Piersons during his repossession of the 2006 Dodge truck that they could "get in touch with" Morgan "to try to work something out." Dkt. #24-1, Morgan Dep. 23:11-24:4. Morgan spoke with Mr. Pierson on August 1, 2016 and again on August 5, 2016. They discussed what payment the Piersons could afford at that time ($300 per month), that Mr. Pierson was having work done on the Freightliner, and the possibility of FNB Giddings going ahead with a possible sale of the 2006 Dodge truck to apply to the Piersons' outstanding debt. *Id.* at 26:10-27:11. Morgan proposed to "set the debt [that remained after applying the proceeds of that sale] up on a 12-month balloon note for $300 a month at a zero percent interest rate" and if all payments were timely made for that 12-month period, to "do it again until we got the debt paid in full, at zero percent interest." *Id.* at 27:6-24.

Mr. Pierson responded favorably, and Morgan agreed to prepare an agreement that reflected those terms. Mr. Pierson was to come by FNB Giddings to sign the agreement. *Id.* at 28:2-7. On August 9, 2016 Mr. Pierson, who worked hauling grass, called Morgan and said that he would not be able to make it to the bank that day because he had a load to haul. On August 10, he informed Morgan he had several loads and again would be unable to make it by the bank to sign the new loan papers. Morgan told him "don't worry about it," "to make money while he

---

[2] Although Morgan also instructed Hancock to repossess the Freightliner truck, the Freightliner truck was not on the Piersons' property on the repossession date and therefore was not repossessed that day. FNB Giddings has taken no further steps to seek to repossess it, believing that the Piersons intended to sell the Freightliner and that those proceeds might help them become current on their loan and in light of this suit. Dkt. #24-1, Morgan Dep. 23:5-8.

could," and to come in to sign the note when the workload ebbed. *Id.* at 28:8-15. Mr. Pierson also offered at that time to help try to sell the 2006 Dodge truck to increase the proceeds that could be applied to the outstanding debt. *Id.* at 28:16-19.

On August 15, 2016, Morgan called Mr. Pierson to see when he might be able to come by to sign the note upon which Morgan believed they had agreed in principle. Mr. Pierson responded that he was "looking at a different route to take care of the whole debt." *Id.* at 28:22-23. Relying on his understanding that Mr. Pierson was still seeking to discharge the debt and potentially redeem the collateral, Morgan told Hancock not to bring the 2006 Dodge truck to the bank to initiate a sale of the truck. *Id.* at 29:7-30:1.

On August 19, 2016, with no prior discussion between the Piersons and Morgan about the topic, Mr. Pierson called Morgan and asked "when he was going to get his letter about the disposition of the collateral." Morgan still had no immediate intent to sell the truck and, indeed, did not believe that Mr. Pierson was instructing Morgan to go ahead and sell the truck, consistent with their earlier negotiations. *Id.* at 30:17-31:21. Nevertheless, in response to Mr. Pierson's request, maintaining his own intent to go forward on the $300 per month at zero percent interest deal, and believing that Mr. Pierson was intending to go forward on that deal or find a way to discharge the debt completely and redeem the collateral, Morgan sent a letter typical of FNB Giddings' notice of sale, which noted the net payoff for the delinquent loan and stated that if the amount was not received by noon at August 30, 2016 the 2006 Dodge truck would be sold at public or private sale (the "August 2016 letter"). *Id.* at 32:18-33:5. Consistent with Morgan's testimony about his intent in sending the August 2016 letter, the truck was not sold on August 30, 2016.[3] About two weeks later, on September 15, 2016, the Piersons filed this lawsuit and

---

[3] FNB Giddings still has not sold the truck. It continues to be stored at H&H Recovery, where it was taken by Hancock when he repossessed it. Morgan Dep. 36:15-17.

later amended their complaint, alleging a claim against Hancock for violation of the Fair Debt Collection Practices Act, UCC and breach of contract claims against FNB Giddings, and claims against FNB Giddings and Hancock for violations of the Texas Debt Collection Practices Act. Dkt. #23. FNB Giddings counterclaimed against the Plaintiffs, seeking a judgment for the full amount of the balance owed on the delinquent loan ($11,688.29), plus any accrued interest, attorney's fees, and an order of sale. Dkt. #6, ¶ 4.

## II. ANALYSIS

Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact is material if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quotations and footnote omitted). When reviewing a summary judgment motion, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014) (alteration in original) (quoting *Anderson*, 477 U.S. at 255). Further, a court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent

summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Furthermore, the nonmovant is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*

"When the moving party has met its Rule 56[ ] burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010). The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Id.* (internal quotation marks omitted). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)). "In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party." *Duffie*, 600 F.3d at 371.

Plaintiffs move for summary judgment against Hancock on their Fair Debt Collection Practices Act ("FDCPA") claim, against FNB Giddings on their UCC and breach of contract

claims, and against FNB Giddings on FNB Giddings' counterclaim.[4] The undersigned addresses these each below.

### 1. Plaintiffs' FDCPA claim against Hancock

Hancock filed his answer to the Piersons' original complaint on October 31, 2016, Dkt. #8, but never filed an answer to the Piersons' Amended Complaint (Dkt. #23), filed August 14, 2017. Hancock also failed to timely respond to Plaintiffs' Motion for Summary Judgment, filed August 15, 2017 (Dkt. #24). Hancock also failed to respond to the Piersons' Requests for Admission.

The undersigned notes that at the time this Motion was referred to the undersigned for Report and Recommendation, no address had been entered into the CM/ECF docketing system for Hancock, who is proceeding *pro se*, and many of Plaintiffs' filings did not include the certificates of service required by the Local Rules. Due to these deficiencies, the docket did not clearly reflect that Hancock had been served with the Piersons' Motion and other docket entries, including orders from this court. Accordingly, the undersigned ordered the Piersons to effect personal service of certain documents, including the Motion, on Hancock. *See* Dkt. #37. The undersigned also entered an order requiring Hancock to respond to the Piersons' Motion for Summary Judgment (Dkt. #24) within fourteen days of being personally served and reminding Hancock that Local Rule CV-7(e)(2) requires a response to dispositive motions within fourteen days. *Id*. To give Hancock every opportunity to participate in this litigation, the undersigned also ordered the Clerk of Court to send a copy of Plaintiffs' Motion for Summary Judgment and other filings to Hancock by certified mail, return receipt requested.

---

[4] Plaintiffs did not move for summary judgment on their "Fourth Cause of Action" by Plaintiff Tommy Lee Pierson against FNB Giddings and Hancock (Dkt. #23, ¶¶ 34-39).

The signed receipt confirming delivery of those filings was docketed December 11, 2017. Dkt. #39. Further, Hancock was personally served by Plaintiffs on December 15, 2017. Dkt. #40-1. As a result, Hancock's response to the Motion for Summary Judgment was due no later than December 29, 2017. *See* Dkt. #37. To date, Hancock has still failed to file any response to the Motion.

Plaintiffs allege that Hancock violated the FDCPA by repossessing the Piersons' 2006 Dodge truck in breach of the peace by his entry through an unlocked gate through which members of the public had been invited for a garage sale the day of the repossession. They support their FDCPA claim almost entirely on the basis of Hancock's "admissions" in this case. Hancock has not answered Plaintiffs' Requests for Admission, and consequently, these matters are deemed admitted, as to Hancock alone, under Fed. R. Civ. P. 36(a)(3). The undersigned notes, however, that Mr. Pierson's affidavit raises fact issues about the repossession of the 2006 Dodge truck: Mr. Pierson's testimony appears to support a conclusion Hancock towed away the truck with the Piersons' permission, on the belief that FNB Giddings would work with the Piersons "to get [the truck] back," as it appears FNB Giddings ultimately endeavored to do. *See* Dkt. #24-2, ¶ 8.

Nevertheless, because Hancock has refused to participate in this lawsuit despite the steps taken by the undersigned to ensure that he is on notice of these proceedings and because he has failed to respond to Plaintiffs' Motion, the undersigned reluctantly recommends granting as unopposed Plaintiffs' Motion for Summary Judgment as to Defendant Shawn Hancock on the Piersons' Fair Debt Collection Practices Act claim. *See* Local Rule CV-7(e)(2).

### 2. Plaintiffs' UCC and breach of contract claims against FNB Giddings, and FNB Giddings's Counterclaim

Plaintiffs' remaining summary judgment arguments against FNB Giddings are all premised on their allegation that FNB Giddings violated Tex. Bus. & Comm. Code § 9.614 and related provisions because its August 2016 letter to the Piersons failed to comply with the notification requirements of that statute. Plaintiffs argue that "[i]f Morgan didn't intend to sell the vehicle, he should never have issued the notice, which explicitly told plaintiffs the vehicle would be sold. Or he should have sent a second letter rescinding the first." Dkt. #30 at 2.

FNB Giddings responds that Morgan sent the August 2016 letter in direct response to a request from Mr. Pierson on August 19, in the context of what Morgan believed to be continuing negotiations to refinance the delinquent loan. Dkt. #29. Morgan's deposition testimony and contemporaneous notes are consistent with the conclusion that Morgan was attempting to afford the Piersons every opportunity to work with FNB Giddings to restructure the debt, including offering to allow Mr. Pierson to participate in the sale of the 2006 Dodge truck to maximize the proceeds of that sale and offering to set the remaining balance on a multi-year loan with reduced payments at zero percent interest. Morgan and Mr. Pierson had multiple conversations about these terms, and the record reflects that Morgan justifiably relied upon these conversations in sending the August 2016 letter.[5]

Notably, the Piersons' affidavits are cursory or silent in their discussion of the overtures made by FNB Giddings to minimize the impact of the repossession on the Piersons. Further, the Piersons have not set forth any evidence that counters what Morgan believed to be Mr. Pierson's

---

[5] FNB Giddings also argues that the court lacks subject matter jurisdiction over the claims against FNB Giddings in this case if the court concludes that Hancock did *not* violate the FDCPA. At the November 30, 2017 hearing, FNB Giddings offered no further support for this assertion, which the undersigned finds to be without merit. Plaintiffs have asserted a federal claim against Hancock and the court may exercise supplemental jurisdiction over the other claims in this case, which derive from the same common nucleus of operative fact, regardless of whether Hancock is ultimately held liable under the federal claim. *See* 28 U.S.C. § 1367(a);(c); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).

apparent agreement in principle to the proposed restructuring Morgan offered them or his reported representations to Morgan that he intended to come to FNB Giddings to sign the restructured agreement. Their argument that Morgan's letter is clear evidence of his intent to sell the vehicle ignores the bulk of evidence currently before the court.

Therefore, drawing all inferences in the light most favorable to the non-movant FNB Giddings, the undersigned concludes summary judgment on these claims is inappropriate on the facts currently before the court. Plaintiffs have not countered the evidence to which FNB Giddings points in support of its contention that the August 2016 letter was never intended to be a notice of sale but was instead a good-faith response by FNB Giddings to what it believed to be Mr. Pierson's request in furtherance of the renewed loan agreement they were negotiating. Accordingly, the undersigned denying Plaintiffs' Motion as to FNB Giddings.

### III. RECOMMENDATIONS

For the foregoing reasons, the undersigned **RECOMMENDS** that Plaintiffs' Motion for Summary Judgment (Dkt. #24) be **GRANTED IN PART** and **DENIED IN PART.** Specifically, the undersigned **RECOMMENDS** the Motion be **GRANTED AS UNOPPOSED** as to Plaintiffs' FDCPA claim against Shawn Hancock and **DENIED** as to Plaintiffs' UCC and breach of contract claims and FNB Giddings's Counterclaim.

The undersigned notes that Plaintiffs' Motion for Summary Judgment did not include Plaintiffs' "Fourth Cause of Action" by Plaintiff Tommy Lee Pierson against FNB Giddings and Hancock (Dkt. #23, ¶¶ 34-39). Accordingly, this Report and Recommendation does not address that claim.

## IV. OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150–53 (1985); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc).

SIGNED January 30, 2018.

_____
MARK LANE
UNITED STATES MAGISTRATE JUDGE